**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **THE ESTATE OF LESTER COTTON,** *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>**SENIOR PLANNING SERVICES, LLC.,** *et al.*,<br><br>  Defendants. | Civil Action No. 19-8921 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

Presently, before the Court is Defendant Price & Price, LLC's Motion to Dismiss under Rule 12(b)(6) (ECF No. 58.), and Defendant Senior Planning Services, LLC's Motion to Dismiss under Rule 12(b)(6) (ECF No. 59).  Alongside, Defendants submitted Memoranda in Support ("Price Moving Br.", ECF No. 58-1; "SPS Moving Br.", ECF No. 59-1.)  Plaintiffs filed separate Oppositions to both Defendants.  (Price Opp'n Br., ECF No. 60);(SPS Opp'n Br., ECF No. 61.) Both Defendants filed a Reply. ("Price Reply Br.,"; ECF No. 62);("SPS Reply Br."; ECF No. 62.)

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, Defendant Senior Planning Services, LLC's Motion to Dismiss will be GRANTED, and Defendant Price & Price, LLC's Motion to Dismiss will be DENIED AS MOOT.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

This matter has a protracted procedural history.  On November 30, 2020, this Court issued an Opinion that (1) granted in part Defendant Senior Planning Services, LLC's Motion to Dismiss,

(2) denied in part Defendant Price & Price, LLC's Motion to Dismiss, and (3) granted Plaintiffs

leave to file an amended complaint.  (ECF No. 53, *Estate of Cotton v. Senior Planning Servs.,*

*LLC*, No. 19-8921, 2020 WL 7022740 (D.N.J. Nov. 30, 2020) ("Omnibus Opinion")).  Insofar as

the parties are intimately familiar with the facts and procedural history of this case, the Court will

only recount the relevant portions herein, and will also incorporate the background facts set forth

in the Omnibus Opinion.  *Id.*

### A.   Factual Background[1]

This matter arises out of Defendants allegedly defrauding Plaintiffs and other Members of

the Classes out of potential Medicaid benefits.  Plaintiff Lester Cotton, who is now deceased, was

a resident of New Jersey.  (TAC ¶ 28.)  Jennifer Cotton acts as Power of Attorney for and as

executrix of the Estate of Lester Cotton ("Cotton Plaintiffs") (TAC ¶ 29.)  Plaintiff Raymond J.

Wojna, Sr., who is now deceased, was a resident of Connecticut, (TAC ¶ 34.), and Plaintiff Helen

Wojna, who is also deceased, was a resident of Connecticut. (TAC ¶¶ 31,33.)  Raymond J. Wojna,

Jr. and David Wojna, act as Power of Attorneys for and as executors of the Estate of Ramond J.

Wojna Sr. and Helen Wojna ("collectively referred to as Wojna Plaintiffs"). (TAC ¶ 36.)

Defendant Senior Planning Services, LLC ("SPS") is a limited liability company

incorporated under the state laws of New Jersey, with its principal place of business in Lakewood,

New Jersey.  (TAC ¶ 38.)  Defendant Price & Price, LLC ("Price") is a limited liability company

incorporated under the state laws of New Jersey, with its principal place of business in

Haddonfield, New Jersey.  (TAC ¶ 41.)

In mid-April, a representative from Genesis contacted Ms. Jennifer Cotton, Mr. Cotton's

daughter and power of attorney, to come in for a meeting concerning Mr. Cotton's Medicaid

---

[1] The following allegations are taken from Plaintiffs Third Amended Complaint ("TAC") and are assumed true for the
purposes of these motions.

eligibility.  (TAC ¶ 92.)  On April 26, 2018, Ms. Cotton attended an information meeting with an SPS executive and was told that SPS would help Mr. Cotton obtain Medicaid.  (TAC ¶ 93.) Plaintiffs allege that Ms. Cotton was specifically told that she "did not have to hire an attorney," because, just as SPS says on its website, SPS would take care of "everything."  (TAC ¶ 94.) Therefore, Ms. Cotton allegedly understood that "everything" meant any and all financial, legal, and administrative matters associated with applying for Medicaid benefits.  *Id.*  Although Ms. Cotton was uncomfortable with the arrangement, she agreed to hire SPS and executed the Fee Agreement.  (TAC ¶ 97; attached as Ex. B)  Specifically, the agreement between Ms. Cotton and SPS provides that, SPS "does not provide any legal service or advice," but will "guide, assist, oversee, file the application, and to perform related follow-up activities associated with the Medicaid application process..." Ex. B.

On May 23, 2018, Ms. Cotton received a copy of Price's Spend-Down Analysis and Recommendations Report ("Spend-Down Report").  (TAC ¶ 102.; attached as Ex. X.)  As previously argued, Plaintiffs allege that a review of the spend-down analysis "indicates that little to no legal work was performed on [Mr. Cotton's] case, or his Medicaid application" and that the analysis lacks any "client-specific information or recommendations."  (TAC ¶ 103.); 2020 WL 7022740, at *14.  The Spend-Down Report instructs Ms. Cotton to act promptly based on the provided recommendations and communicate her decision to SPS.  (TAC ¶ 108.)  Moreover, Price requested an additional fee of $6,500 "to develop and assist with [the] implementation of a Long-Term Care Strategy."  (TAC ¶ 109.)  Bothered by SPS's involvement, Ms. Cotton obtained a lawyer and sought to terminate her engagement with SPS.  (TAC ¶ 108.)

B.    **Procedural Background**

On March 25, 2019, Plaintiffs filed their initial Complaint.  (ECF No. 1.)  On July 29, 2019, Plaintiffs filed an Amended Complaint ("First Amended Complaint"), which, *inter alia*, added the

Wojnas as Plaintiffs. (ECF No. 21.) Thereafter, Defendant SPS and Defendant Price filed Motions to Dismiss. (ECF Nos. 27, 28.) On October 29, 2019, Plaintiffs filed their Second Amended Complaint ("SAC"). (ECF No. 31.) Plaintiffs assert claims on behalf of two putative classes. (SAC ¶147.) Class A, represented by the Cotton Plaintiffs, and Class B, represented by the Wojna Plaintiffs. *Id*. In the SAC, Plaintiffs assert violations of the New Jersey Consumer Fraud Act ("NJCFA") and breach of fiduciary duty claims against SPS, only. (ECF No. 21, *see* Counts I, III.) The remainder of Plaintiffs' claims — unjust enrichment, breach of the implied covenant of good faith and fair dealing, declaratory judgment, and rescission — are asserted against both SPS and Price. (ECF No. 21, *see* Counts II, IV–VI.) On November 12, 2019, Defendants filed separate Motions to Dismiss (ECF Nos. 33-34), which, as described below, were resolved in the Court's November 30, 2020, Omnibus Opinion. (ECF No. 53.) On January 14, 2021, Plaintiffs filed the operative TAC. (ECF No. 59.) Notably, Plaintiffs, on behalf of Class A only, re-assert a nearly identical NJCFA claim (Count 1). (TAC ¶ 160.) Further, Plaintiffs assert two new causes of actions not contained in the SAC: a violation of the Connecticut Unfair Trade Practices Act claim (Count 2), and a breach of contract claim (Count 3). (TAC ¶¶ 169,177.)

   **C.   The November 30, 2020 Omnibus Opinion**

   In response to Defendant SPS and Defendant Price's prior Motions to Dismiss, on November 30, 2020, this Court issued an Omnibus Opinion. The Court granted in part SPS's Motion to Dismiss with respect to Plaintiffs' New Jersey Consumer Fraud Act ("NJCFA")(Count1) claim and permitted Plaintiffs to file an amended complaint to "re-ple[a]d as to the Cotton Plaintiffs and putative Class A members." 2020 WL 7022740, at *69. Primarily, the Court noted that "both sets of Plaintiffs have failed to adequately plead a violation of the NJCFA." *Id*. at *44. The Court explained that in order to state a claim under the NJCFA, plaintiffs must plead, "(1) an unlawful practice; (2) an ascertainable loss; and (3) a causal connection

4

between the two." *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 593 (D.N.J. 2016); *see also Dugan v. TGI Fridays, Inc.*, 171 A.3d 620, 636 (N.J. 2017) ("to prevail under the CFA, a plaintiff must not only prove unlawful conduct by defendant, but must also demonstrate an ascertainable loss by plaintiff and a causal relationship between the unlawful conduct and the ascertainable loss." (internal citations and quotation marks omitted)). *Id*. at *27. Therefore, notwithstanding the choice of law issue concerning the Wojna Plaintiffs, the Court reasoned that Plaintiffs' two theories of unlawful acts committed by SPS were unavailing. *Id*. at *45. Specifically, the Court stated,

> First, Plaintiffs allege that SPS unlawfully performed legal services
> as non-lawyers and/or falsely advertised services which they could
> not legally provide. In that regard, Plaintiffs argue that when SPS's
> conduct is compared to the Committee's description of what
> constitutes the unauthorized practice of law as outlined in the May
> 2016 Opinion, "there can be little doubt that SPS's business and
> commercial practices constituted and continue to constitute
> 'unlawful practices' as defined by both the federal and state cases
> which have considered that question." Pl. Opp. to SPS at 33-34.
> Second, Plaintiffs allege that SPS violated the NJCFA by agreeing
> to provide Medicaid application assistance to clients who could not
> possibly qualify for Medicaid services in the foreseeable future.

*Id*. at *35.[2]

Under Plaintiffs' first allegation, the Court concluded that the relevant inquiry at this time is "whether Plaintiffs have adequately alleged that SPS falsely promised that it could perform legal work, or whether SPS illicitly tendered legal advice to Plaintiffs." *Id*. at *47. The Court found that the SAC "is devoid of specific facts suggesting that SPS either performed legal work on behalf of any of the Plaintiffs, or promised that it would provide legal services." *Id*. at *36. Particularly,

---

[2] The Committee referred to by the Omnibus Opinion is the New Jersey Committee on the Unauthorized Practice of Law. As the Third Amended Complaint points out, in May 2016, the Committee issued an advisory opinion specifically concluding "that non-lawyers and companies that are not law firms who receive payment or compensation for their services, and/or provide advice regarding Medicaid eligibility, are practicing law." (TAC ¶ 12.)

as it relates to the Cotton Plaintiffs, the Court explained that "Plaintiffs have not included specific factual allegations sufficient for this Court to infer that SPS, rather than Price, drafted the Spend-Down Report," a clear legal document. *Id*. at \*50.  The Court concluded that Plaintiffs have not met the Rule 9(b) pleading standard because Plaintiffs have not alleged any specific facts regarding the misrepresentations which induced Ms. Cotton to contract with SPS and Price. *Id*. at \*51.

As to Plaintiffs' second allegation, which involved the assertion that SPS retained clients without regard for whether they would qualify for Medicaid, the Court found this theory to be unavailing as well. *Id*. at \*55.  "As an initial matter, Mrs. Wojna, the only named plaintiff to complete the entire Medicaid application process with SPS, did, in fact, qualify for Medicaid." *Id*. Moreover, the Fee Agreement clearly provides that SPS does not guarantee the success of the Medicaid application. *Id*.; Ex. B.  The Court explained that, "[a]bsent an allegation that SPS expressly promised Plaintiffs that the Medicaid application would be approved, and that SPS did not have a basis to so conclude, or knew that the Plaintiffs would not qualify, Plaintiffs have not adequately alleged fraud in this context." *Id*.

Due to Plaintiffs' unsuccessfully pled NJCFA claims, the Court declined to address the merits of Plaintiffs' state law claims for unjust enrichment, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. *Id*. at \*62.

## II.   LEGAL STANDARD

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  When considering a motion under 12(b)(6), a district court must accept as true the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  A court is, however, permitted to ignore legal conclusions

or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me."

Iqbal, 556 U.S. at 678 (citation omitted).  Ultimately, a court must determine whether "the facts

alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."

*Fowler*, 578 F.3d at 211.  A facially plausible claim "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id*. at 210.

## III.    DISCUSSION

Plaintiffs argue this Court has subject matter jurisdiction under the Class Action Fairness

Act ("CAFA").  (TAC ¶ 20.)  CAFA provides "for Federal court consideration of interstate cases

of national importance under diversity jurisdiction."  Pub L. No. 109-2, §§ 2(a)(4) & 2(b)(2), 119

Stat. 4 (2005).  Pursuant to CAFA, 28 U.S.C. § 1332(d), district courts have original jurisdiction

over class actions where (1) the matter in controversy exceeds $5 million, exclusive of interest and

costs, (2) any member of the class of plaintiffs is a citizen of a state different from any defendant,

and (3) the class has at least 100 members.  28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B), (d)(6).

In the Omnibus Opinion, the Court previously questioned the existence of subject matter

jurisdiction.  2020 WL 7022740, at *60.  Saliently, the Court recognized the infirmity of Plaintiffs'

NJCFA claim, and therefore the difficulty Plaintiffs will have in satisfying CAFA's $5 million

amount in controversy requirement should their NJCFA claim not survive.  *Id*.  The Court noted

that,

> [i]n a prior order, the Court directed the parties to address whether
> Class A independently meets the requirements for CAFA
> jurisdiction, including how many members comprise the class and
> the amount of their potential claims. *See* June 29, 2020 Letter Order.
> In response to the Court's inquiry, Plaintiffs explained that after
> accounting for treble damages and attorneys' fees, both of which
> may be awarded under the NJCFA, Class A's NJCFA claims amount
> to approximately $5.1 million, satisfying CAFA's jurisdictional
> minimum. Pl. Choice of Law Br., at 3.  Relying on a declaration
> from SPS's CEO Ben Mandelbaum, Plaintiffs assert that between

> January 1, 2016 and March 25, 2019 (the date on which Plaintiffs
> filed the instant complaint) SPS and Price jointly contracted with at
> least 340 clients and that the fee charged to those clients averaged at
> or above $5,000 per client, resulting in potential damages of $1.7
> million, before trebling or attorney's fees. *Id*.; *See* also ECF 47, Ex
> A Declaration of Ben Mandelbaum ("Mandelbaum Decl."). Only
> once trebled does the amount in controversy exceed CAFA's $5
> million requirement. *See* Pl. Choice of Law Br., at 3. Thus, based on
> Plaintiffs' own calculations, the existence of CAFA jurisdiction is
> premised on Plaintiffs' NJCFA claim and the treble damages and
> attorney's fees provided under the statute.

*Id*. at *61.

Here again, there is no other claim in the Third Amended Complaint that provides original

jurisdiction, and thus subject matter jurisdiction again rests entirely on Plaintiffs' NJCFA claim

against SPS on behalf of Class A.  The Court will now consider whether the Third Amended

Complaint has remedied the defects identified in the Omnibus Opinion.

In the Omnibus Opinion, the Court explained that if Plaintiffs were to survive dismissal, in

any amended filing they would have to satisfy the pleading requirement for unlawful conduct[3]

with "specific factual allegations demonstrating that SPS did, in fact, perform actions which could

be construed as legal work," or "specific representations that SPS was qualified to perform legal

work, or . . . that the services attendant to the spend-down process . . . could be provided by SPS,

or non-lawyers." *Id*. at *52–53.

---

[3] "Unlawful conduct" is the first of the three elements required to plead a NJCFA Claim.  The remaining two are "(2)
an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the loss." *Block v. Seneca Mortg.
Servicing*, 221 F. Supp. 3d 559, 593 (D.N.J. 2016).  Unlawful conduct "fall[s] into three general categories: affirmative
acts, knowing omissions, and regulation violations." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).
When a defendant commits an affirmative act, "intent is not an essential element, and the plaintiff need not prove that
the defendant intended to commit an unlawful act." *Id*.  Additionally, without more, breach of contract, does not
qualify as unlawful conduct, and therefore, is not sufficient to state a claim under the NJCFA. *Hunt Constr. Group,
Inc. v. Hun Sch. of Princeton*, Civ. No. 08-3550, 2009 WL 1312591, at *5 (D.N.J. May 11, 2009) (explaining that
"under the NJCFA . . . neither a claim for breach of contract nor fraud in the fulfillment of the contract is actionable").

To plead this unlawful conduct, the Third Amended Complaint alleges nearly the same facts that were articulated in the Second Amended Complaint. The primary difference between the two complaints is that Plaintiffs now allege that during the April meeting, an SPS representative allegedly told Ms. Cotton that she "did not have to hire an attorney." (TAC ¶ 94.)

SPS argues that this statement is vague, ambiguous, and mere puffery at best. (SPS Moving Br. 17.) It does not reference what legal work will be performed, particularly with respect to the Step-Down Report. *Id*. Plaintiffs insist that the cited statement establishes that SPS told Ms. Cotton that it could essentially do the job of an attorney. (SPS Opp'n Br. at 17.) They urge the Court to find that SPS is holding itself out as a "one-stop legal shop." *Id*. On Reply, SPS highlights the tenuousness of the NJCFA claim that Plaintiffs now press, insofar as it "now rests entirely on a single alleged oral representation suddenly remembered by Plaintiffs in their fourth iteration of the complaint." (SPS Reply at Br. 2.)

In the Omnibus Opinion the Court provided examples to Plaintiffs as to how to successfully plead an NJCFA claim. Specifically, the Court stated, "Plaintiffs' theory of the case could be supported by allegations that the SPS agents falsely represented that SPS could provide the legal services relevant to effectuating a spend-down of Plaintiffs' assets, such as providing advice regarding the creation of trusts or guardianships, or retitling assets." *Id*. at *51.

Although Plaintiffs have now alleged an oral representation by SPS to Ms. Cotton, the representation fails to provide specificity concerning what legal work SPS said it would perform or actually did perform on Ms. Cotton's behalf. In order to satisfy Rule 9(b)'s exacting standards for pleading fraud, a specific factual basis for Plaintiffs' assertion that SPS performed legal work related to Mr. Cotton's Medicaid eligibility is necessary. *See Fuqua v. Bristol-Myers Squibb Co.*, 926 F. Supp. 2d 538, 550 (D.N.J. Feb. 15, 2013) (noting that Rule 9(b) precludes a litigant from

alleging "conclusory, generalized facts"); *In re Catanella & E.F. Hutton & Co. Sec. Litigation*, 583 F. Supp. 1388, 1397 (E.D. Pa. 1984) (stating that "Rule 9(b)'s particularity requirements prohibit reliance upon unsubstantiated conclusory allegations."). The Court finds that Plaintiffs have failed again to provide specific facts suggesting that SPS either performed legal work on behalf of the Cotton Plaintiffs, or promised that it would provide legal services. Therefore, the Court finds that the Third Amended Complaint fails to plead a requisite element of an NJCFA claim, and that claim must be dismissed.[4]

Because the Court's subject matter jurisdiction depends entirely upon the jurisdiction conveyed by CAFA for the NJCFA claim, and the Court declines to exercise supplemental jurisdiction over the remaining state claim claims (Counts II–VII), the Third Amended Complaint will be dismissed in its entirety. The dismissal will be without prejudice and Plaintiffs shall be afforded 30 days to remedy the defects identified herein and in the Omnibus Opinion. To be clear, no leave is granted to add further claims.[5] Moreover, given Plaintiffs' now multiple unsuccessful attempts to plead their claims, the Court cautions that should they seek to replead them in this Court, the next dismissal, should one be necessary, may be with prejudice.

---

[4] Given that Plaintiffs have not sufficiently pled the unlawful conduct element of an NJCFA claim, the Court will not address the remaining two elements. In the Omnibus Opinion, however, the Court previously found that Plaintiffs have properly pled an ascertainable loss. 2020 WL 7022740, at *59. There, the Court stated, "[a]ssuming Plaintiffs are able to demonstrate that SPS in fact misrepresented the services being provided, or that SPS provided unauthorized legal advice, SPS would not be entitled to the fees under the contract. In that regard, Plaintiffs have sufficiently pled the existence of an actual, definite, ascertainable loss, in the form of the fees paid to SPS." *Id*. A causal relationship would be presumed, given Plaintiffs' injuries could be redressed by the laws of New Jersey. *Id*. at *44.

[5] As Defendant Price & Price LLC points out, the Third Amended Complaint includes new state law claims and a new class definition, all of which are arguably outside the scope of the leave to amend that was previously granted. (Price Moving Br. at 1.) The Court will address this issue if Plaintiffs seek to replead their NJCFA and do so successfully.

## IV.      CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant SPS's Motion to Dismiss, and the Court will **DENY AS MOOT** Defendant Price's Motion to Dismiss.  An appropriate Order will follow.

Date: **December 8, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
